IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RALPH WARREN GOLDEN,
      Plaintiff,

vs.                                          Case No: 1:05cv129/MMP/MD

DEPUTY JOSHUA CREWS,
      Defendant.

## REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon the defendant's special report. (Doc. 32). Plaintiff filed a response to the special report (doc. 23), and on October 25, 2006, this court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special report would be construed as a motion for summary judgment. (Doc. 38). Plaintiff filed a multi-part pleading on January 30, 2007 containing a declaration in opposition to defendant's motion for summary judgment, a brief in opposition to defendant's summary judgment motion, and a statement of disputed factual issues, with attachments. (Doc. 45).

### Background

The record reflects that plaintiff is currently incarcerated at Okaloosa Correctional Institution. He brought this action pursuant to 42 U.S.C. § 1983 to redress alleged violations of his fourth amendment rights that occurred prior to his incarceration. Alachua County Sheriff's Deputy Joshua Crews is the lone defendant

in plaintiff's amended complaint, which was sworn under penalty of perjury on March 19, 2006. (Doc. 20).

Plaintiff contends that on August 9, 2004, a surveillance unit was set up at his residence. He learned about this from a phone call from one Herman Sutton.[1] When plaintiff left his house to go to the laundromat shortly after noticing the surveillance vehicles, he was followed by law enforcement. Plaintiff states that due to Sutton's phone call warning him of the police presence, he "over-reacted" by fleeing. At some point during the pursuit, plaintiff exited his vehicle and fled on foot into a wooded area. He was tracked by helicopter and K-9 patrol, and was eventually located lying in some bushes. Plaintiff was ordered to surrender or officers would release the K-9. He states that he "immediately responded and informed the officer he was coming out." Upon standing up, plaintiff was immediately "covered" by Deputy Crews, Sergeant Bessinger and Deputy L. Johnson and his K-9. Plaintiff indicates that the officers had their revolvers pointed at him and the K-9 was poised to attack on command. As plaintiff approached the officers, Deputy Crews "without warning or instructing plaintiff to lie down in order to be cuffed" ran up behind plaintiff and threw him to the ground, landing on top of him. Plaintiff states that the left side of his head smashed into a large rock, and that he had been unable to avoid injury because his arms were locked behind him. He maintains that he immediately advised Deputy Crews that it felt as if his jaw had been broken. Crews allegedly stated words to the effect that "that's what you get when you rob a fellow officer." Plaintiff was cuffed and lead to a waiting patrol car to wait for medical attention.

In addition to the allegedly excessive use of force in effectuating the arrest, plaintiff also contends that his rights were violated because of the handling of the

---

[1]The record is inconsistent with respect to the role Mr. Sutton played in the law enforcement interest in plaintiff. At one point plaintiff states that Mr. Sutton called him out of guilt because Sutton had provided the police with false information (doc. 45, declaration in opposition to defendant's summary judgment), and in another, it appears that Mr. Sutton was warning plaintiff that law enforcement intended to target him for some alleged crimes. (Doc. 45, brief in opposition to defendant's summary judgment motion). In the complaint he also makes reference to Sutton calling him "out of guilt."

*Case No: 1:05cv129/MMP/MD*

arrest warrant. He maintains that Detective Litzkow, who is not named as a defendant in this action, submitted a false arrest warrant.[2] He makes a seemingly contrary assertion that there was no warrant in this case, and that the deputies stopped him before obtaining the arrest warrant due to their false belief that the laundry basket he had carried to the car was a way of disposing of evidence. He notes that the arrest warrant was not issued until 10:00 p.m., but that the time of the offense conduct was 7:00 p.m.

Plaintiff claims that the above actions and events were in violation of his Fourth Amendment rights and seeks $100,000 in damages.[3]

Defendant Crews' special report paints a slightly different version of events. On the night of plaintiff's arrest, Crews was assigned to a "warrants arrest operation" and was tasked with apprehending and arresting the plaintiff, against whom active felony warrants were outstanding. Crews states in his affidavit that he had information that plaintiff was known to possess and carry weapons. (Doc. 32, exh. 2, ¶ 2).[4] When plaintiff was observed leaving his residence, Crews began to follow him in order to effectuate a traffic stop, and a high speed pursuit ensued. (*Id.* at ¶ 3). Plaintiff wrecked his vehicle and fled the scene on foot. (*Id.* at ¶ 4). He was ultimately located using a combination of deputies, K-9 officers, and heat signaling device from a helicopter. (*Id.* at ¶ 5). Crews states that after plaintiff was located, he emerged from the bushes and began walking towards the three officers present, although he was "repeatedly directed at gunpoint to get on the ground." (*Id.* at ¶ 6).

---

[2]The court speculates from allegations contained elsewhere in the record that he means to say that Litzgow obtained the participation of other law enforcement officers in the surveillance, pursuit, and arrest of the plaintiff by misrepresenting that he had a warrant for plaintiff's arrest before the events in this case took place.

[3]In various places in later pleadings, plaintiff contends that he was not read his *Miranda* rights. This contention was not raised in the complaint and is not relevant to the claims that were raised therein. Likewise, his assertion that the deputies were outside their territorial jurisdiction when they placed him under surveillance or arrested him is irrelevant to the question of whether excessive force was used in effectuating the arrest.

[4]The signed copy of Deputy Crews' affidavit was filed as document 34. For ease of reference, the court will refer to the otherwise identical affidavit appended to the defendant's special report.

**Plaintiff failed to comply, so Deputy Crews holstered his weapon, and using a "standard law enforcement arm bar technique," took plaintiff directly to the ground and handcuffed him. (*Id*. at ¶¶ 6-7). Crews notes that it is the policy of the Alachua County Sheriff's Office to take a suspect to the ground in making a felony arrest to ensure that the suspect can be properly controlled. Crews further opines that he did not use any more force than necessary to take plaintiff to the ground and handcuff him and that it did not appear to him that the force used was sufficient to cause injury. He also notes that at all times, plaintiff's right arm was free. (*Id.* at ¶ 7).**

**Deputy Crews admits that after plaintiff was on his feet, plaintiff stated that he thought his jaw was broken, because when he went down he had hit a rock. (*Id.* at ¶ 9). He notes, however, that plaintiff stated that he understood Crews was not trying to hurt him but that he believed he broke his jaw when he was taken to the ground. (*Id.* at ¶ 10). He denied having stated to plaintiff "That's what you get when you rob a fellow officer" or words to that effect. (*Id.* at ¶ 11). EMS arrived and transferred plaintiff to Alachua County Hospital where a doctor verified that his jaw was broken. (*Id.* at ¶12). Crews went back to the area where plaintiff was taken down after the incident. He noted that it was an extremely dark area next to a retention pond. He observed a rock approximately 9" in diameter that stuck above the ground approximately 7", but noted that there was no way he could have seen the rock prior to taking plaintiff to the ground. (*Id.* at ¶ 13).**

**Deputy Crews maintains that he used no force against the plaintiff, other than that necessary to take him to the ground and handcuff him, and that if plaintiff injured his jaw during the takedown, it was accidental. (*Id.* at ¶¶ 14, 15). He also notes that he has no personal knowledge of whether plaintiff's broken jaw occurred as a result of the takedown, or as a result of the automobile crash that happened during the pursuit. (*Id.* at ¶ 15). A supplemental incident report attached to the defendant's affidavit that was prepared on August 9, 2004, the date of the incident, corroborates the information contained within the affidavit.**

Crews has also submitted the affidavit of Alachua County Deputy Sheriff Darrell Bessinger, who was present at the scene. (Doc. 32, exh. 2). In his affidavit, Bessinger details the surveillance, the pursuit and the search for plaintiff once he fled the accident scene on foot. He corroborates the statements of Deputy Crews that plaintiff was directed several times at gunpoint to get on the ground but did not comply, that Crews used the standard law enforcement tactic to take plaintiff down, and that Crews did not use any more force than necessary to accomplish the takedown and handcuffing of the plaintiff, or force that might be sufficient to injure the plaintiff. (*Id.* at ¶¶ 9, 10). Deputy Bessinger states that he heard plaintiff inform Crews that he thought his jaw was broken, and that he had landed on a rock when he hit the ground. (*Id.* at ¶ 11). He denied having overheard Crews say to plaintiff "That's what you get when you rob a fellow officer" or any words to that effect. (*Id.* at ¶ 12). Deputy Bessinger prepared an incident report contemporaneous with the events in question that corroborates his affidavit.

The last affidavit was submitted by Alachua County Deputy Sheriff Lee Johnson, the handler of one of the dogs involved in the search. (Doc. 32, exh. 3). He described Crews' takedown of the plaintiff as a standard and appropriate law enforcement arm bar technique. He states that at no time did Deputy Crews use more force than was necessary or did he tell plaintiff "That's what you get when you rob a fellow officer" or words to that effect. (*Id.* at ¶¶ 5, 6).

All three deputies stated in their affidavits that it is the policy of the Alachua County Sheriff's Office that in making a felony arrest the suspect is taken to the ground to be handcuffed so that the suspect can be properly controlled.

Defendant does not address plaintiff's claim that his rights were violated because he was stopped without a valid arrest warrant.

In plaintiff's response to defendant's special report, he argues that the defendant's statement that he had outstanding warrants at the time of the incident in question is false. As proof thereof, plaintiff notes that none of the charges that

originated from the date in question involved a pre-existing warrant, and that when he was booked into the Alachua County Jail and first appeared, it was only on the new charges. He also points out that an arrest warrant was not obtained until several hours after his arrest, and cites an excerpt from the deposition testimony of Detective Mark Litzkow. (Doc. 45, exh. C at 11-12).

Plaintiff also argues that the fact that Deputy Bessinger's incident report omits mention of plaintiff disobeying repeated orders to lie on the ground indicates that no such orders were given.[5] He maintains that it was "totally unnecessary for Deputy Crews to unexpectly (sic) run up from behind plaintiff without warning and tackle plaintiff, driving plaintiff (sic) head straight to the ground while plaintiff was cooperating with officers' instructions."

After the parties were given the opportunity to file additional materials, plaintiff submitted a declaration and a brief in opposition to defendant's motion for summary judgment, and a statement of disputed facts. (Doc. 45). In his declaration, he reemphasizes his version of events, that he was obeying the officers' orders when Deputy Crews "attacked" him, and maintains that this creates a genuine issue of material fact for trial. In his brief in opposition to defendant's summary judgment motion, he sets forth facts that, while not entirely consistent with the facts set forth elsewhere, do not contradict his core allegations: that defendant did not have a warrant to effectuate the initial arrest, and that plaintiff was complying with the orders he was given by the deputies, such that Deputy Crews' "takedown" was an unconstitutionally excessive use of force.

---

[5]While plaintiff is correct that his alleged refusal to obey orders to lie down was not mentioned by Bessinger in his report, Deputy Crews' report, also prepared contemporaneously with the events at issue, **does** mention plaintiff's non-compliance. (Doc. 32, part 2, attachment to Crews affidavit).

Case No: 1:05cv129/MMP/MD

**Legal Analysis**

    **Summary Judgment Standard**

On a motion for summary judgment, this court must evaluate the record in the light most favorable to plaintiff as the nonmovant and grant defendants' motion only if the record demonstrates that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002); F.R.C.P. 56. The court must resolve all disputes and draw all inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); see also *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir.1999). Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake,* 880 F.2d 348, 351 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). Finally, it is improper for the district court to make credibility determinations on a motion for summary judgment. *Miller v. Harget,* 458 F.3d 1251, 1256 (11th Cir. 2006); *Bischoff v. Osceola County,* 222 F.3d 874, 876 (11th Cir. 2000); *Harris v. Ostrout*, 65 F.3d 912, 916-17 (11th Cir. 1995); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

Even without a discussion of the prevailing legal standards, it is clear that there are genuine issues of material fact that cannot be resolved on a paper record.

However, for the sake of completeness, the court briefly sets forth the applicable legal standards.

### Fourth Amendment Standard

Claims involving allegations of excessive use of force in making an arrest arise under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Determining whether the amount of force used was reasonable requires a balancing of the government interests at stake with the intrusion on the individual's interests. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871. Factors to be considered include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*. 490 U.S. at 396, 109 S.Ct. at 1872 (citing *Tennessee v. Garner*, 471 U.S. at 8-9, 105 S.Ct. at 1699-1700). Reasonableness of a use of force should not be judged with 20/20 hindsight vision, but rather from the perspective of a "reasonable" officer at the scene. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S.Ct. 1868, 1879-1881, 20 L.Ed.2d 889 (1968)); *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 2159, 150 L.Ed.2d 272, 284 (2001); *Vineyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. at 1872; *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 2159, 150 L.Ed.2d 272, 284 (2001). And, the dispositive question is whether the law enforcement officer's actions are "objectively reasonable." *Id.*

### Qualified Immunity Standard

Qualified immunity shields government officials from suits against them in their individual capacities for those actions taken within the scope of their discretionary authority that do not violate a clearly established constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To establish qualified immunity, defendants bear the initial burden of showing that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred; once this burden is met, the onus is then on the plaintiff to show that the defendants violated clearly established constitutional law. *Id.* at 1563-64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983). Plaintiff can satisfy this burden by showing that 1) the laws or rights that were allegedly violated were clearly established at the time defendants acted, and 2) that there is at least a genuine issue of material fact as to whether the defendants actually committed the acts. *Id.* at 1563; *see also Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

In regard to the first burden, the plaintiff must show that the constitutional right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir. 1989). Immunity should be granted if, at the time of the officer's actions, the law was unclear or the officer could have reasonably believed his actions were lawful. *Id*. If plaintiff's evidence would not support a reasonable jury's finding that the defendants violated plaintiff's constitutional rights, the issue of qualified immunity need not be addressed. *Campbell v. Sikes*, 169 F.3d 1353, 1361-62 (11th Cir. 1999).

### Conclusion of Law Regarding Material Facts

Although defendant contends that plaintiff has not established a Fourth Amendment violation and that he is entitled to the protection of qualified immunity,

the core facts in this case regarding plaintiff's excessive force claim are clearly in dispute. Plaintiff maintains that he complied with every order given to him by Deputy Bessinger once he was located after his flight from law enforcement. He states that he was standing with his hands on his head approximately five feet from the group of officers when he was tackled unexpectedly from behind by Deputy Crews. The affidavits of Deputy Crews and the other officers paint a different picture. According to the deputies, plaintiff ignored requests to get down on the ground. And, the "takedown" was done in accordance with standard law enforcement procedure and not in the violent manner suggested by plaintiff.

Although each party's actions version of events may appear reasonable as that party has presented them, each clearly cannot be correct, and this case is not in the proper procedural posture for resolution of credibility determinations. *See Miller; Bischoff; supra.* At this juncture, since the defendant is the moving party, the facts must be taken in the light most favorable to the plaintiff. The relevant question thus becomes whether Deputy Crews' conduct in effectuating a physical takedown, that possibly resulted in a broken jaw, was reasonable given that plaintiff was obeying orders, not resisting arrest, and no longer attempting to hide or flee. When the question is framed in this light, the defendant is clearly not entitled to summary judgment based either on a Fourth Amendment or qualified immunity analysis. The motion must therefore be denied.

As noted above, defendant has not addressed the plaintiff's claim that his rights were violated due to the fact that no warrant for his arrest existed prior to the surveillance, pursuit and his apprehension. Therefore, summary judgment is likewise inappropriate on that claim.

Accordingly, it is respectfully RECOMMENDED:

That defendant's motion for summary judgment (doc. 32) be DENIED, and this case be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 29th day of March, 2007.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).